IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CLARENDON NATIONAL INSURANCE )    CIVIL NO. 06-00434 SOM/BMK
COMPANY,                           )
                               )
        Plaintiff,       )    ORDER GRANTING DEFENDANTS'
                               )    MOTION FOR SUMMARY JUDGMENT
    vs.                     )    AND DENYING PLAINTIFF'S
                               )    MOTION FOR SUMMARY JUDGMENT
JERRY SMEAD, SUSAN HEE,        )
WALTER MURAOKA AND YOSHIKO    )
MURAOKA, AND DOES 1-100,      )
                               )
        Defendants.      )
_____ )

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I.       INTRODUCTION.

       Plaintiff Clarendon National Insurance Company

("Clarendon") seeks a declaration that it owes no duty under a

homeowner's insurance policy ("the Policy") it issued to

Defendants Jerry Smead and Susan Hee (collectively, "Defendants")

with respect to a dispute between Defendants and their neighbors,

Walter Muraoka and Yoshiko Muraoka (collectively, "the

Muraokas").[1]  Defendants are being sued in state court ("the

state court action") by the Muraokas, who claim that Defendants'

landscaping and renovations damaged the Muraokas' property and

caused them to suffer emotional distress.  Clarendon is defending

Defendants subject to a reservation of rights.[2]

_____

     [1] Clarendon has dismissed the Muraokas from this lawsuit.

     [2] As explained below, Liberty Mutual Group ("Liberty
Mutual") is also providing a defense for Defendants in the state
court action.

Before the court are Clarendon's and Defendants' motions for summary judgment.  Clarendon argues that the Muraokas' claims in the state court action are not covered, stating, "All claims for damages asserted by [the Muraokas] in the underlying case are the result of deliberate conduct by the insureds and therefore not a covered 'occurrence' under the policy."  Alternatively, Clarendon argues that "the intentional act exclusion applies to preclude coverage" because Defendants "knew with substantial certainty that some injury would result." Clarendon also argues that the Muraokas' claims for injunctive relief and punitive damages are not covered by the Policy.

Defendants posit that Clarendon has a duty to defend them in the state court action because the "Muraoka complaint is replete with allegations that create the potential for indemnification liability under the subject policy."[3]  Defendants also claim that Clarendon's "duty to indemnify cannot be determined until the underlying claims are settled or adjudicated."

Concluding that the Muraokas' claims are potentially covered and that the intentional acts exclusion does not preclude coverage, this court grants Defendants' motion and denies Clarendon's motion.

---

[3] Defendants alternatively assert that "Clarendon should be estopped at this late date from attempting to disclaim coverage, because it failed to timely reserve its rights."  The court does not reach this issue.

II.      LEGAL STANDARD.

         Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

         Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter</u>, 383 F.3d at 1024 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." <u>Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587).

III.    <u>BACKGROUND.</u>

Defendants are the owners of a residential property in Honolulu.  Declaration of Jerry Smead (4/16/2007) ("Smead Decl'n") ¶ 4.  The Muraokas own the property next to Defendants' property. <u>Id.</u> ¶ 5.

In January 2001, Defendants hired Todd Hugo ("Hugo") of Kamuela Landscaping "to do certain landscaping work at our house." <u>Id.</u> ¶ 6.  Hugo "completed the landscaping work [on] or about May 2001" and "continued to come out to our property until

4

about January 2002 to do maintenance with the work he had done."
Id.

On May 10, 2004, the Muraokas' attorney sent a letter
to Defendants, stating, "Water run-off from your property has
resulted in personal injury and substantial property damage to
your neighbors, Walter and Yoshiko Muraoka, and their residence."
The letter explained that, before Defendants' landscaping and
renovations, the Muraokas' property "had swales which allowed any
excessive rainwater to drain down towards Kauna Street."  Ex. H
(attached to Defendants' Motion) at 1 (footnote omitted).  The
Muraokas' attorney explained that the landscaping "disturbed the
existing grades and soil composition of the rear side and side
yards of [Defendants'] property, which altered the existing
drainage patterns and diverted the water onto the Muraokas'
property."  Id. at 3.  The letter requested that Defendants
provide the Muraokas with "written confirmation that (1) you will
correct the source of the problems, and (2) make the Muraokas
whole by agreeing to pay for the necessary remedial work to their
home and yard."  Id. at 6.  According to Defendants, "they were
not able to come to an agreement with the Muraokas as to how to
rectify the dispute."  Defendants' Memo. in Support of Motion
at 6.

On August 10, 2004, the Muraokas filed the state court
action against Defendants and Kamuela Landscaping.  See generally
Ex. A (attached to Clarendon's Motion).  The Muraokas alleged

that Defendants' landscaping and renovations caused "excessive
storm and sprinkler waters to continuously seep onto [the
Muraokas'] property," caused "personal injury in the form of
health problems," and "increased the risk of mold and mildew
exposure, leptospirosis exposure, and other health hazards
associated with insect infestation." Id. ¶ 1.  The Muraokas
asserted claims for trespass, nuisance, negligence, and negligent
and/or intentional infliction of emotional distress and prayed
for special, general, and punitive damages, injunctive relief,
attorneys' fees, and costs.  Id. ¶¶ 21-42.

Defendants tendered the state court action to Liberty
Mutual, which had issued a homeowner's insurance Policy to
Defendants, effective from May 28, 2003, to May 28, 2004.  On
August 21, 2004, Liberty Mutual denied the tender.  Ex. M
(attached to Defendants' Motion) at 1 ("Because the [state court]
complaint alleges no damages to which our policy would apply, we
are unable to provide coverage or a defense.").  Defendants then
brought a declaratory judgment action against Liberty Mutual
regarding its duties to defend and indemnify Defendants.  This
action was settled, and Liberty Mutual agreed "to defend and
indemnify [Defendants] for covered claims in the [state court
action] on a 50/50 basis with [Defendants'] other insurer,

6

Clarendon."[4]  Smead Decl'n ¶ 23; Ex. O (attached to Defendants'
Motion) at 4; see generally Ex. N (attached to Defendants'
Motion).

Defendants also tendered the state court action to
Clarendon, which had issued Defendants a homeowner's insurance
Policy, Policy Number TRH 990460, effective May 28, 1999, to
May 28, 2000.  See generally Ex. B-C (attached to Defendants'
Motion).  That initial Policy was renewed for the following three
years, with coverage terminating on May 28, 2003, the day before
Liberty Mutual's homeowner's insurance policy took effect.  See
Exs. D-F (attached to Defendants' Motion).

Regarding liability coverage, the Policy issued by
Clarendon provides:

> If a claim is made or a suit is brought
> against an "insured" for damages because of
> "bodily injury" or "property damage" caused
> by an "occurrence" to which this coverage
> applies, we will:
>
> 1.    Pay up to our limit of liability for the
>       damages for which the "insured" is
>       legally liable.  Damages include
>       prejudgement interest awarded against
>       the "insured"; and
>
> 2.    Provide a defense at our expense by
>       counsel of our choice, even if the suit
>       is groundless, false or fraudulent.  We
>       may investigate and settle any claim or
>       suit that we decide is appropriate.  Our

---

[4]  "Clarendon paid for all attorneys' fees and expenses
related to the action against Liberty Mutual."  Smead Decl'n
¶ 25.

> duty to settle or defend ends when the
> amount we pay for damages resulting from
> the "occurrence" equals our limits of
> liability.

Ex. B (attached to Defendants' Motion) at 14; Ex. B (attached to

Clarendon's Motion) at 11.  The Policy excludes coverage for

"'bodily injury' or 'property damage' . . . [w]hich is expected

or intended by the 'insured.'"  Ex. B (attached to Defendants'

Motion) at 15; Ex. B (attached to Clarendon's Motion) at 12.  The

Policy also includes the following definitions:

> 1.  "Bodily injury" means bodily harm,
>     sickness or disease, including required
>     care, loss of services and death that
>     results.
>
> . . . .
>
> 5.  "Occurrence" means an accident,
>     including continuous or repeated
>     exposure to substantially the same
>     general harmful conditions, which
>     results, during the policy period, in:
>
>     a.  "Bodily injury"; or
>
>     b.  "Property damage".
>
> 6.  "Property damage" means physical injury
>     to, destruction of, or loss of use of
>     tangible property.

Ex. B (attached to Defendants' Motion) at 4; Ex. B (attached to

Clarendon's Motion) at 1.

On August 27, 2004, Crawford and Company ("Crawford"),

acting as Clarendon's agent, retained an attorney to provide a

defense for Defendants in the state court action.  See Ex. L

(attached to Defendants' Motion) at 1.  That same day, Crawford
also sent Defendants a Non-Waiver Agreement to sign.  Ex. J
(attached to Defendants' Motion) at 1-2; Ex. C (attached to
Clarendon's Motion) at 1.  Defendants signed and returned the
Non-Waiver Agreement, which stated in pertinent part:

> THEREFORE, it is understood and agreed
> between [Defendants] and [Clarendon] that
> [Clarendon] may by its representatives
> proceed to investigate the said accident, or
> undertake the defense of any suit growing out
> of the said accident, without prejudice to
> the rights of [Clarendon], and that no action
> heretofore or hereafter taken by [Clarendon]
> shall be construed as a waiver of the right
> of [Clarendon], if in fact it has such right,
> to deny liability and withdraw from the case;
> also, that by the execution of this agreement
> [Defendants do] not waive any right under the
> Policy.

Ex. J (attached to Defendants' Motion) at 2; Ex. C (attached to
Clarendon's Motion) at 1.

Nearly a year and a half later, on February 15, 2006,
Clarendon sent Defendants a letter setting forth "several
independent reasons that coverage may not exist under the
Clarendon policy."  Ex. P (attached to Defendants' Motion)
at 6-7.  The letter stated that Clarendon "reserves its right to
file a declaratory action to determine Clarendon's duties under
the Clarendon policy issued to" Defendants.  Id. at 14.

IV.      <u>ANALYSIS.</u>

  A.   The Muraokas' Injuries May Have Been Caused
    <u>by an Occurrence, or Accident.</u>

  The Policy covers claims for damages "because of 'bodily injury' or 'property damage' caused by an 'occurrence.'" The parties dispute whether the Muraokas' alleged injuries were caused by an "occurrence," which the Policy defines as "an accident."  Clarendon argues that the injuries were caused not by an occurrence, but by the landscaping and renovations that were Defendants' deliberate acts.  Clarendon's Memo. in Support of Motion at 6.  Clarendon says that the "fact that [Defendants] presumably did not intend to damage [the Muraokas'] property does not convert these intentional acts into an 'accident.'"  <u>Id.</u> at 12.  In response, Defendants assert, "Under Clarendon's view of the world, virtually any deliberate or voluntary act by the insured would not be an 'accident,' no matter whether any resulting injury was intended or expected by the insured." Defendants' Opp. at 9.  Defendants claim, "When determining whether there is an 'accident' for purposes of insurance coverage, the better view is that the insured's lack of intent or reasonable expectation <u>to cause injury</u> . . . is determinative." <u>Id.</u> (emphasis in original).  The court concludes that Clarendon owes Defendants a duty to defend against the state court action.

  Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts.

<u>Dawes v. First Ins. Co. of Haw.</u>, 77 Haw. 117, 121, 883 P.2d 38, 42 (Haw. 1994).  Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.  <u>Id.</u> at 121, 883 P.2d at 42; <u>First Ins. Co. of Haw. v. State</u>, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); <u>see also</u> Haw. Rev. Stat. § 431:10-237 (1993) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.").  Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that insurance policies are construed in accordance with the reasonable expectations of a layperson.  <u>Dawes</u>, 77 Haw. at 131, 883 P.2d at 42.

     The burden is on the insured to establish coverage under an insurance policy.  <u>See</u> <u>Sentinel Ins. Co. v. First Ins. Co. of Haw.</u>, 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (Haw. 1994).  The insurer has the burden of establishing the applicability of an exclusion.  <u>See</u> <u>id.</u> at 297, 875 P.2d at 914.

     The obligation to defend an insured is broader than the duty to pay claims.  <u>Id.</u> at 287, 875 P.2d at 904.  The duty to defend "arises wherever there is the mere <u>potential</u> for coverage." <u>Id.</u> (emphasis in original).  The duty to indemnify is owed "for any loss or injury which comes within the coverage

11

provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins. Co., 92 Haw. 398, 413, 992 P.2d 93, 108 (Haw. 2000) (citation omitted).

Additionally, "Hawaii adheres to the 'complaint allegation rule.'" Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (citing Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)).  Under that rule,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract.  'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230 (Haw. 1994) ("Hawaiian Holiday")).

Clarendon's Policy provides coverage for the Muraokas' claims if they suffered bodily injury or property damage "caused by an 'occurrence.'"  Ex. B (attached to Clarendon's Motion) at 11; Ex. B (attached to Defendants' Motion) at 14. "Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Ex. B (attached to Clarendon's Motion) at 1; Ex. B (attached to Defendants' Motion) at 4.  The parties

dispute whether the Muraokas' claims are alleging injury and damage caused by an occurrence, or accident.

The Hawaii Supreme Court has previously addressed what constitutes an "accident" in a line of cases concerning various insurance policies.  In Hawaiian Insurance & Guaranty Co. v. Blanco, 72 Haw. 9, 12, 804 P.2d 876, 878 (Haw. 1990), overruled on other grounds by Dairy Rd. Partners, 92 Haw. at 422, 992 P.2d at 117, the Hawaii Supreme Court was faced with an insurance policy that defined "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in . . . bodily injury[,] or . . . property damage."  In that case, Saturnino Blanco ("Blanco") was injured when Ireneo Garcia ("Garcia") shot a rifle in Blanco's direction.  Id. at 11, 804 P.2d at 877.  Blanco brought a civil action against Garcia, asserting claims for the willful, intentional, and/or negligent firing of a rifle at Blanco and for the negligent infliction of emotional distress on Blanco's wife, who witnessed the shooting. Id. at 12, 804 P.2d at 878.  After an arbitrator awarded monetary damages against Garcia, Blanco demanded that Hawaiian Insurance and Guaranty Company, Ltd., ("HIG"), Garcia's homeowner's insurer, pay the award.  Id. at 12-15, 804 P.2d at 878-79.  HIG refused and brought a separate action seeking a declaration that it owed no duty to defend or indemnify Garcia.  Id. at 15, 804 P.2d at 879.

13

The trial court granted summary judgment to HIG. Id.
On appeal, the Hawaii Supreme Court noted that HIG owed duties
under the insurance policy only if injury or damage resulted from
an "occurrence." Id. at 12, 804 P.2d at 878. The court stated,
"Given the best possible interpretation, Garcia fired the rifle
in [Blanco's] direction intending to frighten him. That physical
injury might result from such an action is certainly something
which a reasonable man in Garcia's position should have
anticipated and expected." Id. at 18, 804 P.2d at 881.
Regarding the mental distress alleged by Blanco's wife, the court
stated, "[I]t is clear that a reasonable man in Garcia's
position, firing a rifle intentionally in the direction of a
woman's husband, would anticipate, and hence expect, that that
woman might suffer emotional injury and distress at witnessing
the incident." Id. at 19, 804 P.2d at 881. The Hawaii Supreme
Court affirmed the trial court's ruling that HIG owed neither a
duty to defend nor a duty to indemnify Blanco or his wife. Id.

The Hawaii Supreme Court in Blanco was tracking its
ruling in Hawaiian Ins. & Guar. Co. v. Brooks, 67 Haw. 285, 292,
686 P.2d 23, 24 (Haw. 1984), overruled on other grounds by Dairy
Rd. Partners, 92 Haw. at 422, 992 P.2d at 117. In Brooks, Robert
Carroll ("Carroll") was driving a truck owned by Continental Auto
Repair, Inc., when he offered a ride to Christine Brooks
("Brooks"). Brooks got into the rear section of the truck, where

she was "assaulted, battered, and raped" by Isaac Bunker ("Bunker"), another passenger in the truck.  Id. at 292, 686 P.2d at 25.  Brooks sued Carroll, Bunker, and Continental, and Continental's insurer, HIG, defended Continental subject to a reservation of rights.  See id. at 287, 686 P.2d at 25.

HIG also filed suit against Continental, Carroll, Bunker, and Brooks, seeking a declaration that HIG owed no duties under the insurance policy, which provided coverage for bodily injury "caused by an occurrence."  Id. at 289, 686 P.2d at 26. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Id.  The trial court entered summary judgment in HIG's favor, and Brooks appealed. With respect to Bunker's actions, the Hawaii Supreme Court stated that "the harm occasioned by his victim was hardly unexpected or unintentional."  Id. at 292, 686 P.2d at 28.  Regarding Carroll, the court noted that he "could see the incident taking place in the back of the truck," but "chose not to do anything to prevent or mitigate the harm suffered by the victim."  Id.  Thus, the court concluded that "it was definitely unreasonable for Carroll to think Continental's automobile liability policy would protect him from liability to this instance."  Id.  Seeing no potential

15

for coverage, the Hawaii Supreme Court identified no duty owed by HIG.  Id.

In Hawaiian Holiday, 76 Haw. at 170, 872 P.2d at 234, the Hawaii Supreme Court revisited its decisions in Blanco and Brooks.  Hawaiian Holiday involved claims that an insured had "planted fewer trees than the parties had agreed to pursuant to the contract, purposely planted ungrafted trees and immature seedlings contrary to the contract, and planted the seedlings and the grass simultaneously, again contrary to the contract."  The issue before the court was whether the alleged damage was caused by an "occurrence," which the applicable insurance policy defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Id. at 234-35, 872 P.2d at 170-71.  The court relied on its prior decisions, stating, "The teaching of Blanco and Brooks . . . is that, in order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions."  Id. at 170, 872 P.2d at 234.  After noting that the plaintiffs' claims "did not sound in negligence" and were "not accidental," the court concluded that the insured's actions did not constitute an "occurrence" under the insurance policy.  Id. at 171, 872 P.2d at 235.

16

At the hearing on this matter, Clarendon argued that the definition of "accident" in <u>Hawaiian Holiday</u> is inapplicable to this case because the definition of "occurrence" in the <u>Hawaiian Holiday</u> insurance policy differs from the definition in the Policy before this court.  However, in <u>Burlington</u>, 383 F.3d at 943, 948, a case concerning an insurance policy with the same definition of "occurrence" as in the Policy, the Ninth Circuit relied on the definition of "accident" in <u>Hawaiian Holiday</u>, noting, "In Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'"  <u>Id.</u> at 947 (quoting <u>Hawaiian Holiday</u>, 76 Haw. at 170, 872 P.2d at 234).  Given the Ninth Circuit's reliance on <u>Hawaiian Holiday</u> in <u>Burlington</u>, the court is unpersuaded by Clarendon's argument that <u>Hawaiian Holiday</u> is inapplicable to the present case.

The foregoing cases establish that, under Hawaii law, "in order for [Clarendon] to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of [Defendants'] own intentional acts or omissions."  <u>See Hawaiian Holiday</u>, 76 Haw. at 170, 872 P.2d at 234.  The issues before this court are therefore whether the claims against Defendants involve alleged acts that were intentional and, if so, whether the Muraokas' alleged property damage and emotional distress were expected or reasonably foreseeable injuries.

17

At the hearing on this matter, Clarendon contended that all of Defendants' actions were deliberate.  Clarendon acknowledged that the state court complaint asserts a claim for negligence, but argued at the hearing that Defendants' acts of landscaping and renovating were deliberate--not negligent--acts and therefore preclude coverage.

Under the "complaint allegation rule," this court is required to "focus . . . on the alleged claims and facts" in the state court complaint.  See Burlington, 383 F.3d at 944-45.  In paragraph 33 of the state court complaint, the Muraokas allege that Defendants "negligently renovated or landscaped their property to the detriment of" the Muraokas.  State Court Complaint ¶ 33.  Because the state court complaint clearly alleges that Defendants' actions were negligent, the court rejects Clarendon's argument that the complaint alleges only deliberate conduct.

The parties urge the court to focus on whether Defendants intended the Muraokas' resulting injuries.  Clarendon argued at the hearing that Defendants need only intend their acts and not the resulting injuries, pointing to cases interpreting California law that suggest that an insured's actions are not covered so long as the insured intends the acts that caused the injuries.  See Clarendon's Memo. in Support of Motion at 9-12 (citing Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir.

1991); <u>Allstate Ins. Co. v. Salahutdin</u>, 815 F. Supp. 1309 (N.D. Cal. 1992)).  Defendants, on the other hand, point to Minnesota law, which they say requires the insured to have intended the resulting injury, not merely his or her own acts.  <u>See</u> Defendants' Opp. at 9-11 (citing <u>Am. Family Ins. Co. v. Walser</u>, 628 N.W.2d 605 (Minn. 2001)).

Neither party addresses whether the Hawaii Supreme Court would likely adopt California or Minnesota law, but the court need not decide that issue because Hawaii law is clear that "the <u>injury</u> cannot be the expected or reasonably foreseeable result of the insured's own <u>intentional</u> acts or omissions." <u>Hawaiian Holiday</u>, 76 Haw. at 170, 872 P.2d at 234 (emphases added).  The Muraokas' state court complaint alleges that Defendants caused injuries through actions that were, at least in part, negligent.  As at least some of the Muraokas' allegations claim that the Muraokas were injured or damaged by Defendants' negligence, not exclusively by intentional acts, the Muraokas are alleging conduct that makes the Muraokas' claims at least potentially covered.

B.   <u>The Intentional Acts Exclusion Is Inapplicable.</u>

Clarendon alternatively argues, "Even if the allegations of the complaint did allege an occurrence, coverage would still not apply due to the intentional act exclusion." Clarendon's Memo. in Support of Motion at 12.  In support of this

19

assertion, Clarendon says, "The Muraokas not only allege a deliberate act of renovating or landscaping the subject property, but also allege that by renovating and landscaping, the insureds altered existing drainage patterns causing water to be diverted on the Muraokas' property."  Clarendon's Memo. in Support of Motion at 12-13.  Defendants respond that "it simply cannot be said on the facts of this case--especially as a matter of law--that [Defendants] expected or intended injury to" the Muraokas.  Defendants' Opp. at 13.  The court concludes that Clarendon has not met its burden of establishing the applicability of the exclusion.

The Policy excludes coverage for "'bodily injury' or 'property damage' . . . [w]hich is expected or intended by the 'insured.'"  Ex. B (attached to Clarendon's Motion) at 12; Ex. B (attached to Defendants' Motion) at 15.  Based on the exclusion's plain language, Clarendon must therefore show that Defendants intended or expected the resulting injury to the Muraokas.  <u>See Sentinel Ins. Co.</u>, 76 Haw. at 297, 875 P.2d at 914 (noting that the insurer bears the burden of establishing the applicability of an exclusion); <u>see also</u> <u>Dawes</u>, 77 Haw. at 121, 883 P.2d at 42 ("the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended").

20

The only evidence Clarendon points to as establishing that Defendants expected or intended the resulting injuries are paragraphs 6 and 19 of the state court complaint.  Clarendon's Memo. in Support of Motion at 13.  In paragraph 6 of the state court complaint, the Muraokas allege that Defendants' landscaping and renovations "altered existing drainage patterns, causing water to be diverted onto [the Muraokas'] property instead of towards Kauna Street as it did for decades."  Ex. A (attached to Clarendon's Motion) ¶ 6.  In paragraph 19 of the state court complaint, the Muraokas allege that Defendants ignored the Muraokas' requests to "correct the problem."  Id. ¶ 19.  Neither of these allegations establishes that Defendants "expected or intended" the Muraokas' injuries when Defendants landscaped and renovated their property.  Clarendon therefore fails to meet its burden to show that the exclusion applies to preclude coverage.  See Sentinel Ins. Co., 76 Haw. at 297, 875 P.2d at 914.  Because the Muraokas' claims are potentially covered, Clarendon owes Defendants a duty to defend against the state court action.[5]  See

_____

[5] Clarendon also argues that it owes no duties under the Policy regarding the Muraokas' claims for injunctive relief and punitive damages.  Clarendon must defend Defendants against those claims.  See Bayudan v. Tradewind Ins. Co., 87 Haw. 379, 383, 927 P.2d 1061, 1065 (Haw. Ct. App. 1998) ("where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage").  However, Defendants agree that the Policy "does not insure against punitive damages, and that such damages would not be covered if awarded in the underlying

<u>Dairy Rd. Partners</u>, 92 Haw. at 412, 992 P.2d at 107 (the duty to defend "arises wherever there is the mere potential for coverage").

V.        <u>CONCLUSION.</u>

The court grants Defendants' motion for summary judgment and denies Clarendon's motion for summary judgment. Clarendon owes a duty to defend Defendants against the Muraokas' claims.  The issue of indemnification for any covered claims the Muraokas' may prevail on is left for further adjudication.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 7, 2007.




_____
Susan Oki Mollway
United States District Judge


**<u>Clarendon National Insurance Company v. Jerry Smead, et al.</u>, Civ. No. 06-00434 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.**

───────────────

lawsuit."  Defendants' Opp. at 13; <u>see also</u> Haw. Rev. Stat. § 431:10-240 ("Coverage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included.").